Savannah Walgreens against Workers' Compensation Commission 5 0 9 0 6 1 2 Council, please. Rick Day, Committee of the Council. Rick, proceed. May it please the Court, Council, my name is Rick Day. I represent Walgreens in this matter. This matter does involve a manifest way argument. The Commission decision regarding accident, causation, and notice, we believe are contrary to the manifest way to the evidence and that the decision should be reversed. Even though we are dealing with a factual analysis here, we believe the appellate court can set aside the Commission's decision and the circuit court when there is clearly evident and plain, indisputable, when the evident and plain and clearly undisputed way to the evidence compels the court to an opposite conclusion. Now, you've seen our briefs. There is no dispute regarding the 11804 claim. Mr. Roberson sustained an injury to his back, but we are disputing the second claim of 2907. Mr. Roberson had a back injury, 11804. He was diagnosed with a disc herniation and degenerative disc disease. He underwent conservative treatment and then was released. He then returned to work full-duty. He worked from June 2005 until February 9, 2007. During that period of time, it's important to note he did not receive any medical treatment. He did not make any complaints, nor did he ask for any kind of medical treatment during that period of time. Fast forward to February 9, 2007. He claims an aggravation of his back due to his work activities. However, he never reports this to his employer, to his supervisor. He never completes an incident report, which he is required to do, which in fact is something that he did when he had his initial injury on 11804. What he does ask to complete is a request for leave document. He contacts Human Resources of Walgreens, asks for this and says, is this related to a work injury? He also identifies other complaints actually besides even his low back. He includes his neck, his arms, etc. Now the medical is obviously very important in this situation as well. First time he seeks medical treatment after 2907 was when he contacts his primary care physician, Dr. Kelly. He reports back pain, upper back pain, and neck pain. He mentions to Dr. Kelly that he had been seeing a chiropractor. So four days after this accident, he's indicating he's already saw a chiropractor. But he does not mention to Dr. Kelly anything about a work injury or any problems with his low back due to his work activities at Walgreens. How many days after the date of the alleged accident did he see Dr. Kelly? He didn't see Dr. Kelly. He talked to him on the phone and left a message. And that was what date? February 13, 2007. So it was a few days after the alleged injury. Correct. The first time he does see a doctor is Dr. Kowalski. Dr. Kowalski is the physician who treated Mr. Roberson after his initial work injury, the first one, 11804, treated him conservatively. He went back to see him again in order to seek treatment for his back. The history that was given to Dr. Kowalski is doing well until about two weeks ago, subtle denies any type of injury. He makes no complaints that his low back pain is related to his work activity. You're complaining, one of the things you're focusing in on is the fact that in these meetings initially after the February 9th alleged injury, he doesn't provide any accident history connecting it to a work injury. None whatsoever. But he did say that he began to complain of pain in his low back and he was unable to He complained to his low back, neck, arm, a myriad of complaints to Dr. Kelly at that point. At that point Dr. Kelly didn't see him so he did not keep him off work. He had taken himself off work at that point. And then he contacted Dr. Kelly based on the fact that he wasn't able to get into Dr. Kowalski sooner than I think Dr. Kowalski had him like six weeks out. And what was the period of time in which there were no complaints between the first injury and the second? Between June, it was June 26th, 2005 and February 9th, 2007. He worked, made no complaints, no problems to his supervisors, no medical treatment whatsoever. So why then couldn't the commission find, even in the absence of documenting the initial medical visits that this was connected to his work, why couldn't the commission find that it was connected to a work-related injury? Because there was no evidence to substantiate there was in fact a work injury. Not only did he not report it, nor did he not complete an incident report, he did not report to his physicians. Well couldn't they believe him? You said nothing was substantiated. Couldn't the commission believe the claimant? Without substantiated evidence, no. I mean there's, I believe one of the cases that's been cited, I think it's a Rockford case. Strictly based upon that testimony, you do not need to... Did Mr. McLaurin testify? I'm sorry, I'm... Mr. McLaurin was a McLaurin... McLaurin, I'm sorry. McLaurin, did he testify? Yes, he did, sir. What did he say? Mr. McLaurin was his supervisor at the time of the 2907 incident, had been a supervisor for almost a year. Mr. McLaurin testified. Mr. Roberson never made any complaints of back problems up until 2907. In fact, didn't make any complaints to him at that time. They had an argument about a work issue, and Mr. McLaurin's testimony was that he got upset and left the job that day. Never reported that he had been experiencing back complaints or on that day was experiencing back complaints. That was his testimony. Does this case really turn on strictly the testimony of the claimant? Didn't Dr. Gornet clearly testify that both the February 2007 and the November injury exacerbated an existing condition? They played a role in his condition of ill-being. Isn't there medical, expert medical testimony to support the claimant? There is medical expert testimony, but I think you need to look at that testimony clearly as well. And I would argue that if you look at it, you'll notice that Dr. Gornet, when he initially saw Mr. Roberson in August 2007, number one, did not take a history of any injury occurring on February 9th, 2007, or that an aggravation even occurred on February 9th, 2007. He was strictly informed of the fact that this initial injury of November 2004. In fact, none of the physicians who saw Mr. Roberson after February 9th, 2007 took a history of an aggravation or any problems associated with a work injury on February 9th, 2007. That's a significant point. Dr. Gornet testifies in his deposition that, based upon the question provided by counsel, that he believes there could have been an aggravation. But again, Dr. Gornet's opinion, number one, he did not take a history at the time he initially saw him. Number two, he did not look at any of the medical records associated with Mr. Roberson's treatment. So he had no idea, and he testified in cross-examination, no idea of any of the treatment he had underwent prior to seeing him. And number three, did not know anything about the guy's job activities that he had been performing. You're saying the basis for his opinion is flawed, and however, isn't it up to the commission to determine the weight to be given to the testimony? That is one of their prerogatives, no question. But the fact is that this court can also evaluate and has evaluated, in other cases, the basis for an expert's opinion. And if it lacks any kind of foundation and suggests an opposite result, then this court can certainly overturn the commission's decision. You're not suggesting that we can re-weigh the evidence, are you? Not that you can re-weigh it, but you can evaluate it and determine if, in fact, an opposite conclusion could have been drawn from that evidence. And that's what I'm asking you to do, because I think the evidence in this case certainly suggests it. I noticed the name of Carl Williams, I think it was. There was a Carl Williams that was identified during testimony, correct. And he was? He was the supervisor above Mr. McLaurin. And did he know something about this? His name was brought up, he never testified. Why not? No one called him as a witness. Didn't anyone call him? I had the supervisor who had spoke with Mr. Roberson. He was the one that, Mr. Roberson was reporting an injury, that's who he reports it to. Mr. Roberson never reported anything to Mr. McLaurin. So his testimony was that, you know, no injury was reported, I'm the So, I didn't see any need to bring Mr. Williams in. I guess if opposing counsel certainly had the opportunity to subpoena him and ask him to come in and testify if they thought something different was, you know, stated. Did he testify he spoke to Williams? He testified that, yeah, he testified that he did speak to Williams. In fact, I think that he was there when Mr. Roberson was speaking to Mr. Williams, and there was never any discussion about a work injury. The claimant testified that he reported a work injury to Williams. The claimant testified that he... Williams did not rebut that, he didn't testify, he didn't say that wasn't true. That is correct, but Mr. Roberson, although he said, this is what he said, I was having bad complaints, he did not complete an incident report. If he would have mentioned that to Mr. Williams, there would have been obviously an incident report completed. Mr. Roberson knows that whenever an incident is reported, you have to complete an incident report. He did it after the November 8, 2004 injury. He acknowledged that that was something he should have done. I asked him why he didn't do it, I don't know, it was his response. For some reason, Mr. Williams didn't testify that he didn't do anything. No. The claimant said he did something with respect to Mr. Williams. Did he testify to that? Mr. Roberson testified he did speak with Mr. Williams. Correct. Mr. Williams didn't testify. Then why didn't Mr. Roberson complete an incident report? Why did he indicate on the request for leave form that this was not a work-related injury? Why did he wait until August of 2007 to even report it to his employer that this was in fact a work injury at the time in which he filed an application for adjustment claim? Why didn't he report then to the doctors who saw him for that four or five month period of time that he in fact had an injury at work or that his work activities were causing his low back pain? Why do those questions need to be answered? They need to be answered in order to establish a claim for the date of injury of 2009-07. But the claimant testifying to this, Williams not rebutting it, isn't that sufficient to carry the date? No, because the claimant's own testimony I think is clearly questionable. He indicates in his testimony at the time of trial, I was having problems this whole time from November 2004 up to the time of this 2009-07 claim. That is completely opposite of what is indicated in the medical records. To get these facts straight in the timeline, you're saying that in February there was some type of statement signed by the claimant? In February, on February 20, 2007, a statement, well it was a request for leave document. That's a statement. That's a statement that was signed by the claimant indicating that he needed time off because of low back pain, neck pain, both arm pain, upper back pain, and he was identified by the fact that it was not related to a work case. So he makes a statement that the symptoms he's experiencing are not related to anything related to work. Absolutely. Okay, and so you've got Robeson, who is the person you're supposed to report an injury to, right? McLaurin was the person you were supposed to report the injury to. McLaurin. Yeah, you mentioned Robeson. Okay, McLaurin. Right. And McLaurin testified. Correct. And said he never said anything. Correct. Okay, and then Williams is McLaurin's supervisor? Correct. Okay, so you're saying I didn't need to have Williams there because I had the person to whom he's supposed to report to. That is correct. And he's saying never mentioned? Correct. So do you think maybe the claimant would put Williams on? You would have anticipated that. Okay. I mean, I'm hearing it for the first time he talked to Williams at the time of the trial, so I mean, I can't depose him beforehand, otherwise, yeah, sure I would have had Mr. Robeson. He says that. But I'm hearing it for the first time during his direct examination. So, you know, I do know that Mr. McLaurin was his supervisor. I do know that he had, Mr. McLaurin had a discussion with Mr. Robeson, and I do know that he never reported to Mr. McLaurin a work injury. He never reported a work injury to any of his medical providers. That's an important point, too, because, I mean, obviously you need to, in a host of whether or not, you know, the injury is in fact work related. He does, and his own doctor, the doctor he treated with for his first injury says, this is not a work injury. None of the doctors actually indicate a work injury on 2907 except for Dr. Burnett, which I submit to you. He doesn't have even a basis for making that comment, because he never looked at any of the medical records, never looked and identified any of the job activities he was performing. So he really wouldn't know what this guy was doing, which may have even aggravated a back condition. So, I would submit to you based, you know, really based upon a lot of that evidence that the Commission's decision and the Circuit Court's decision really does not have a reasonable basis for their decision. I think the greater weight of the evidence certainly shows that this incident did not occur, or there was no incident that occurred on 2907 based on any of the testimony or any of the medical documents. I would direct your attention to, in fact, I think two cases that were identified in our briefs that I think are pretty important here. One of which is this Montgomery Evaluator versus Industrial Commission. But frankly, it's a case that says, you know, benefits were initially denied, but then the Court of Appeals, the Appellate Court, reversed. And the reason why they reversed, they looked at things like, was there any dispute? Your time is up. You'll have time on rebuttal. Thank you. Counsel, please. Justices, Mr. Day, my name is Christy Cooksey, and I represent the petitioner, Mr. Scott Roberson. And I first want to talk a little bit about what happened on November 8, 2004. Although it is an undisputed work injury, we have a history in the record of a man who's worked for a respondent since 1999. He had no prior back treatment, back conditions, no prior work comp claims, no prior lawsuits, nothing. He had worked for a respondent since 1999. Where did I pick up the date, 1990? You picked up 1990? I picked up 1999. I didn't write on my notes where I got that date. I believe he testified to it, though, Your Honor, that he had... That's right. I have that his employment began with Walgreens on March 19, 1999. Thank you. He was, at that point, given an MRI which showed disc protrusions at L4-5 and L5-S1 and was given conservative treatment by Dr. Kowalski. When was this? This was for the 2004 injury. In November? In November, correct. He treated conservatively, didn't receive all the treatment that Dr. Kowalski wanted him to because the claim was not authorized at that point. It was disputed, but eventually he was able to return to work. At that time, he had a different job. He was a full case stock. Fast forward to February 9, 2007. He is now a split case stock. On this job, he is bent over cutting between 1,800 and 2,300 boxes per shift. He cuts the tops off the boxes and he lifts them up, and those boxes weigh between 30 and 50 pounds. This is a repetitive job. It's tough. There's no dispute in the evidence that this was his job. In fact, the respondent's witnesses did provide support to that testimony. Mr. Roberson testified that this repetitive trauma manifested itself on February 9, 2007. How would the employer know that? Well, he clocked in that day at 145 and he did his job like he had been doing since he started for a respondent, but he was having pain. And he said the first time he would have told respondent was when he did approach his immediate supervisor, Mr. McLaurin, and he told him that he was having pain and he needed help. That request went, he said, do the best you can. Make do. And so nothing happened. He wasn't referred to anywhere. He wasn't told he could go fill out an accident report. So what did he do? He went back and continued working. But at that point, it got too bad. And what did he testify? Did he ever fill out an accident report to this employer? No, Your Honor. Then he went above McLaurin's head to Mr. Williams. In his whole work history? Oh, I'm sorry. I thought you were specifically to this employer. You're saying he wasn't told to. Did he have to be told to? Had he ever filed a report before with Walmart? For Walmart? Yeah, I mean with his employer. I'm sorry, for Walgreens? Walgreens. Yes, he did in 2004. Oh, so he knew about it. He knew how to proceed. He admitted at arbitration that he did know on that date when he had this discreet incident of lifting and then he pulled his back, he did fill out an incident report. On the state, however, he went and he orally reported to two supervisors. When one didn't listen, he went over the next one's head and he said, I've got to leave. I'm in too much pain. And I'm leaving early because of all of this repetitive work I'm doing. I've asked for help. I'm not getting it. I can't continue. And one of these supervisors did testify, and his testimony was that there were some production issues that day and that he talked to a petitioner about production issues and that he had a vague recollection that he might have left because he was in pain or sick. But on cross-examination, what he said was, I don't know. He did talk to Williams, asked Williams. All right, so you presented the argument as to his reporting to the supervisors that he was experiencing pain as a result of working the shift that day. How do you respond to opposing counsel's argument that the claimant did not report to his medical providers that the injury was work-related? I respond to that argument that the claimant did, in fact, say that these work activities were the source of his problem, that they aggravated his problem. Is that in any one of the medical records? Yes, it is. I'm going to start with the desperate calls for treatment. While he doesn't reference that, his first visit to Dr. Kowalski is February 20th. Now, very clear in the record that that wasn't the first time he sought treatment. In fact, his first documented call on February 13th was because he couldn't get into a doctor any sooner and he was desperate for somebody to see him to deal with this pain. He finally gets his primary care doctor to get his appointment with Kowalski moved up, and what does the intake form say? And I've referenced that in my records. It actually has, side-by-side on page 90 of the record, the 11804 date and the 2907 date, well, 220, because that's the date he saw him, and it references both jobs, and it references what is aggravating this problem. It is working this job, working eight-hour shifts, standing, bending, those are the things in there. He asks about recreational activities. He asks about anything else. What's the history given? Written down in Dr. Kowalski's records, that is work. He goes to Dr. Bowman. What history does he give? Well, the problem originally started on 11804. I've had that problem since that date, and what is it aggravated by? Repetitive bending and standing, the same bending and standing that he does all shifts, the same bending and standing that he reported to Dr. Kowalski, that he reported to his supervisors, that he testified to at arbitration, and that Dr. Bowman wrote in his records. And then, finally, we get to Dr. Gournett, again, a report of that February 2007 aggravation from all of the bending and standing and lifting at work. So we believe that there is a consistent record of evidence showing that these work activities were the aggravating factor. Mr. Roberson's testimony was credible, that he gave these reports. The arbitrator watched him testify and listened to his supervisors. Multiple respondents' witnesses testified. Which supervisors did the arbitrator listen to? McLaurin testified, and then a witness from Human Resources also testified. It was a human resource manager that testified. Not his supervisor? No. So there's only one supervisor who has testified. One supervisor testified, and that was Mr. McLaurin. And Mr. McLaurin, in the end, said, yeah, I knew he at least left with some pain or was sick, and I don't remember the exact details, so it's possible he talked to Williams, asked Williams. Williams, the arbitrator noted, was five minutes away at work. Was five minutes away from the hearing. So the arbitrator is saying, oh, geez, somebody should have gotten Williams there? That's what is written in the arbitrator's testimony. Who do you think should have gotten Williams there? Well, we had testimony that he reported it to two people, and their witness said, gee, I don't remember, ask Williams. So we think that if they wanted to dispute notice, that they should have brought in Williams. We didn't have control over Williams at that point. What's the explanation for the claimant's completion of the Family Medical Leave Act document saying it was not a co-occurring injury? Well, I think that the case law is pretty specific, and I won't go over that, that that is not dispositive. But putting that aside, let's put ourselves in Mr. Roberson's situation. He's working this job. He's having increased pain. He goes to one supervisor, says, help me. No. He goes to the other supervisor. He says, I can't do this anymore. I've got to go. Then we see these desperate calls, get me medical treatment, get me medical treatment. I'm running out of sick days. I need to justify being off work. I need help. This is my problem. And as soon as he gets into Dr. Kowalski, which is a huge delay, obviously to him, because he's in this kind of pain that he's calling all of his doctors, he gets Dr. Kowalski to fill out some reports. He fills out some reports to justify his time off work. He filled out those reports so that he didn't lose his job. I think that's the testimony. Is that what his testimony was? No. No, that's not what his testimony is. His testimony is, I put that on there. I filled out the report. Shouldn't that be considered in terms of credibility of your appointment? I don't think so. And I think that that was... Seems like a factual, intentional misstatement at best. I think that, I don't think so. No. I think that at this point, this is a man who's having considerable problems. He's having considerable problems when he's at work. He leaves work. He connects that in his history, not only in arbitration, but also to his medical providers. But is this a comp claim? Is this something I'm going to get money for? Is this repetitive trauma that manifests itself and related to work, is that something that I'm going to be able to get? At this point, I just need to save my job. And so I don't think at this point that this man can be charged with knowing that I should have filled out an application for adjustment of claim at this point. Ultimately, he did, because he got counsel, but not before. So there should be two different standards for filling out a report. If it's aggravation of pre-existing injury, it should be quite a stringent standard as opposed to an incident that's traumatic? I think aggravation of a pre-existing condition and trauma versus repetitive trauma are different. And they've been supported as different in the case law because of the insidious onset, because of the manifestation, and because of the need to get to a doctor and let him explain what's going on once you've given the history and everything you've done. And I think Dr. Gornad provided that explanation when he said, look, in November of 2004, he suffered this annular tear. He was able to get through this with conservative treatment and get back to work, but this was still there. And ultimately, through repetitive loading, we produced a scenario of subtle mitral trauma that has progressed to the point that now the disc can basically not handle itself. In February, I believe that disc essentially finally went and gave him persistent pain. So I think that's something that we need to look at, what was happening inside of his body and what the doctor was able to describe when we're looking at a repetitive trauma theory and what the claimant is going through as he's discovering that his body can't go on. What is the date of claim for an aggravation of a repetitive trauma? Well, it can be four different ways. Under the case law that is in the state of Illinois, it can be through medical consultation. It can be the last day you were able to work. It can be the date of disablement. It can even be post-termination. And under the case law, we're encouraged to pick that date. And in this date, that date was the last day he was able to work. The day he threw his hands up and said, my body cannot do this repetitive load anymore. Even though I've worked here all this time, I had this accident, I had this accident, I can't go on. And he desperately sought medical treatment. How many days do you have to report that? 45 days. Is there anything within 45 days? Yes, I believe the two oral reports to the supervisor saying that my body is not handling this work anymore, this repetitive lifting. I need help. When I'm not getting help, I can't do it anymore. And he gets to a doctor. Okay. We actually just had the claimant's testimony that he reported it. Do you have that denied by the clerk? Well, I don't consider it a denial. Yes, he denies, but he also says he doesn't remember and asks for it. So I believe that a claimant's testimony is dispositive on the issue. I think it is a credibility issue, and it is. But there is evidence in the record that substantiates the arbitrator's decision that this claim is compensable, that there was proper notice, the commission's affirmation, and then the circuit court's affirmation. You still don't think it's problematic when you make an intentional misstatement? I don't believe it was an intentional misstatement. About? On the report? Saying it wasn't work-related? Yes. I believe he was simply filling out paperwork. I don't believe it was an intentional misstatement. I think at this point he has related these problems to work, but he doesn't think he has a work compensation. A cynic would say, well, he's saying that because of some benefit he's going to get, and an arbitrator could have made the other findings as well, but he's saying I did all of these things now because I'm going to get a benefit as well. I don't think there's any evidence in the record that he was going to get any benefit from that statement. FMLA is unpaid time off. Okay, that's what you're saying. Well, I don't know that there's any evidence that he's getting a benefit from this statement. I think he's worried about getting in paperwork showing that he has a medical reason to be off work, and that is shown by the desperate calls to the doctors saying I'm going to be out of sick days, please see me, I'm having these problems. But I don't think that discounts his testimony that this is the problem. I don't believe it discounts his testimony or that his accounts to doctors that this is what aggravated his problem, this is why his problem got worse, and I don't think it discounts Dr. Gornad's ultimate opinion that that is the history we have.  The objective fact that he did leave early and there's no dispute about that, that he sought treatment, made desperate calls for treatment, Dr. Kowalski's intake form, Dr. Bowman's history as well as Dr. Gornad's and his causation opinion, I would ask that all of those things support sufficient facts in the record that support all of the decisions that have found this claim compensable, and we ask that that be affirmed. Thank you. A follow-up, please. Again, I'd go back to manifest weight here, what we're looking at. Obviously, first of all, if he said he couldn't do it anymore, why didn't he then insist on an incident report because he knew one needed to be completed? When he went to his doctors, why didn't he indicate this is what I was doing at work, this is why my back is hurting? Council refers to this intake sheet that was completed by Dr. Kowalski's office about supporting the fact that there was an incident or problem occurring on 2907. The only date of accident that is referenced in this document is 11804, onset of symptoms, 11804, heavy lifting at work. That's what he was doing in November 2004. There is no document that shows any kind of aggravation or lifting or whatever he was doing on February 9, 2007. And when was that? That was with Dr. Kowalski. Dr. Kowalski on 22007, first time he sought medical treatment. Council references Dr. Funk. The opposing council said there's something in that document that says repetitive bending and that sort of stuff. What this document says, it says onset 11804, history of trauma, heavy lifting at work, duration of symptoms, getting worse with activity, chiropractor didn't help. It talks about doing a full case stocker and now doing a split case stocker. There is no indication of any particular incident and or work activity that's causing this problem. Okay, but there is activity. It's asking a question of what kind of work, where would he work. He's just filling out where he worked and the kind of work he was doing. Doesn't the fact that this is a repetitive trauma case make it a little different? You're not disputing that there was work-related injury in November. Correct. So he's not an attorney. He's working there. All of a sudden he starts to feel pain. He says he has pain and he wants to leave. Does he have to use the magical phrase, I'm here because of a work-related injury? No, I think what he has to do is, listen, I'm having back pain and I'd like to seek medical attention or I want to report an injury because that's what he's required to do. He didn't say in that report he was feeling back pain? That's not what he went to the doctor for? The report you have there doesn't refer to back pain? Yes, low back, right leg and great toe is what this document refers to. But there is no indication. The thing is that you have to place the employer on notice of the fact that there is an injury. That's one of our issues here as well is lack of any kind of notice. He never placed the employer on notice of the fact that he was seeking benefits for a work injury. The employer received the request for leave. What did the arbitrator mean when he said that McLaren was the one that he's a claimant asked for help? I'm sorry, I didn't hear you, sir. What did the arbitrator mean when he said that McLaren was the one that the claimant asked for help? I think he said that's when Mr. Roberson claimed he reported to Mr. McLaren, hey, I need some help because they were talking about a recirculation problem that he was having. He was not getting his work done on a timely basis. So he asked, Mr. Roberson asked Mr. McLaren for help with his recirculation problem. That's what I believe that testimony refers to. All right. And he also, according to the arbitrator, called Dr. Kelly and Dr. Kowalski on February 13th of 2007? He called Dr. Kelly on February 13th indicating the problems that he was experiencing with his neck, back, hands, etc., and that he was trying to get into Dr. Kowalski and was, I guess, asking for Dr. Kelly's, quite frankly, his assistance in getting him to see Dr. Kowalski soon. I believe that's what that refers to. And that was four days after the incident? Correct. Well, yes, after February 19th. And that would not be evidence of some kind of connecting it to a work-related incident? No, because I think the fact of the matter, number one, is that he did indicate he was seeking chiropractic treatment, which would have been, I think, quite frankly, before February 9th. Number one. Number two was that he doesn't mention anything about his work causing his problems. Well, how did Dr. Kowalski, if the arbitrator is correct, that Dr. Kowalski, note of February 15th shows, call to make an appointment in two weeks, like you said, he is unable to work and has no more six days. What does he do? Take him off work or see him sooner? And so what did Dr. Kowalski do with that? Yes. Well, he knew about it apparently. Well, Dr. Kowalski... He said he didn't know about it. Well, Dr. Kowalski didn't at that point. I mean, that was just a note from Dr. Kelly's office documenting the conversation with Mr.... The arbitrator says this is Dr. Kowalski's note. Dr. Kowalski didn't see him before February 20th, 2007. So I believe that's Dr. Kelly's... He didn't say he saw him. He said he did indicate something to him. Okay. Your time is up, counsel. Clerk will take the matter under advisory for disposition.